UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN W. GRIFFITHS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:11-cv-12115-JLT |
| | * | |
| TOWN OF HANOVER, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

August 21, 2012

TAURO, J.

I.      Introduction

Plaintiff in this action is a resident of Plymouth County, Massachusetts, and a disabled

Vietnam War veteran. Defendants are the Town of Hanover ("Hanover"); the John Curtis Free

Library ("Library") a public library in Hanover; and Library Director Lorraine Welsh ("Welsh").

Plaintiff sues Defendants on four counts, three of which are at issue in this Motion to Dismiss

[#6]: Count I, violation of the Massachusetts Civil Rights Act; Count III, violation of the

Massachusetts Public Accommodations Statute; and Count IV, intentional infliction of emotional

distress. Plaintiff's Count II, violation of 42 U.S.C. § 1983, is not at issue. For the reasons stated

below, Defendants' Motion for Partial Dismissal [#6] is ALLOWED.

II.    Background

    A.    Factual Background[1]

Plaintiff is a disabled Vietnam War veteran and resident of Plymouth County, Massachusetts.[2] Until November 2010, Plaintiff frequented the Defendant Library to use its computers to access the Internet.[3] On November 14, 2010, while Plaintiff was seated at a library computer, a librarian approached him, informed him that his library privileges had been suspended, and asked him to leave.[4] The librarian told Plaintiff that he would have to discuss the suspension of his library privileges with Defendant Welsh, and that, because Defendant Welsh was not working that day, he would have to return at another time.[5] Plaintiff left Defendant Library voluntarily and without incident.[6]  He later learned that he had been accused of viewing pornography on the library computer.[7]

    Several days later, Plaintiff returned to Defendant Library.[8] Plaintiff reserved time to use a

---

[1] At the motion to dismiss stage, the court must construe the facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)), and so relates the facts as they appear in Plaintiff's Amended Complaint [#1, Ex. A], Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008).

[2] Am. Compl. [#1, ex. A] ¶¶ 1, 7.

[3] Am. Compl. ¶ 6.

[4] Am. Compl. ¶¶ 8-9, 11.

[5] Am. Compl. ¶¶ 8-9.

[6] Am. Compl. ¶ 9.

[7] Am. Compl. ¶ 11.

[8] Am. Compl. ¶ 10.

library computer.[9] While Plaintiff was using the computer, a uniformed Hanover police officer

approached him and served him with a lifetime "no trespass" order signed by Defendant Welsh.[10]

The officer physically removed Plaintiff from his chair and escorted him from Defendant Library.[11]

### B.   Procedural Background

On March 21, 2011, acting pro se, Plaintiff filed his first Complaint[#1, ex. B] in this

action in Massachusetts Superior Court. On May 20, 2011, Plaintiff filed a complaint with the

Massachusetts Commission Against Discrimination ("MCAD"). On November 23, 2011, more

than ninety days after filing his MCAD complaint, Plaintiff filed his Amended Complaint [#1, ex.

A].  On December 1, 2011, Defendants filed their Notice of Removal [#1] and the case was

removed to the United States District Court for the District of Massachusetts. Also on December

1, 2011, Defendants filed Defendants' Motion for Partial Dismissal [#6], which is currently before

this court.

## III.   Discussion

### A.   Legal Standard

Fed. R. Civ. P. 8(a) requires that a complaint contain "a short and plain statement of the

claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 12(b)(6) requires that a

complaint be dismissed if it "fail[s] to state a claim upon which relief can be granted . . . ."[12] The

court should approach the complaint "on the assumption that all the allegations in the complaint

---

[9] Am. Compl. ¶ 10.

[10] Am. Compl. ¶ 10.

[11] Am. Compl. ¶10.

[12] Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 12(b)(6).

3

are true."[13] A complaint may survive a motion to dismiss only if, however, with all factual

allegations credited, the complaint "state[s] a claim to relief that is plausible on its face."[14] This

facial plausibility does not require that a complaint contain "detailed factual allegations," but does

ask for "more than labels and conclusions," or "a formulaic recitation of the of the elements of a

cause of action."[15] The factual allegations included in the complaint must do more than suggest

the "possibility that a defendant has acted unlawfully"[16] by pleading facts "consistent with" that

conclusion.[17] A complaint must, instead, include enough factual matter "to raise the right to relief

above the speculative level"[18] and to "allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."[19]

The deference afforded to a plaintiff's factual allegations at the motion to dismiss stage

does not extend to any legal conclusions that might appear in the complaint.[20] While they may

provide a "framework" for the complaint, legal conclusions must be supported by factual

allegations that "plausibly give rise to an entitlement to relief."[21] If a complaint alleges sufficient

---

[13] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[14] Id. at 570.

[15] Id. at 555.

[16] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[17] Twombly, 550 U.S. at 557 (quoted in Iqbal, 556 U.S. at 678).

[18] Twombly, at 555.

[19] Iqbal, 556 U.S. at 678.

[20] Id.

[21] Id. at 679.

facts, the court will afford it the benefit of the doubt, and "a well-pleaded complaint may proceed

even if . . . proof of those facts is improbable, and that recovery is remote and unlikely."[22]

      B.     <u>Analysis</u>

           i.     <u>The Massachusetts Civil Rights Act</u>

Section 11I of the Massachusetts Civil Rights Act ("the Civil Rights Act") states, in

relevant part:

> [a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages.[23]

Section 11H defines an unlawful interference with rights as an interference that takes place

through "threats, intimidation or coercion," undertaken by "any person or persons, whether or not

acting under color of law."[24] State court decisions have established that the Civil Rights Act

applies only to persons, and that "a municipality is not a person under the [Civil Rights Act]."[25]

The immunity of a municipality from suit under the Civil Rights Act extends to a municipality's

officials when they are sued in their official capacities.[26]

---

[22] <u>Twombly</u>, 550 U.S. at 556.

[23] Mass. Gen. Laws ch. 12 § 11I.

[24] Mass. Gen Laws ch. 12 § 11H.

[25] <u>Howcroft v. City of Peabody</u>, 747 N.E.2d 729, 744 (Mass. App. Ct. 2001).

[26] <u>Id.</u> at 745 (citing <u>O'Malley v. Sheriff of Worcester Cnty.</u>, 612 N.E.2d 641, 648 n.13 (Mass. 1993) ("[T]o avoid a state's sovereign immunity to a damages suit, a plaintiff must sue the State official in his individual and not his official capacity.")).

Here, Defendant Hanover and Defendant Library are immune from suit under the Civil Rights Act because the statute does not apply to municipalities. Defendant Welsh–in her official capacity as library director–is also immune because the Civil Rights Act does not apply to officials of a municipality sued in their official capacities.

Because the Civil Rights Act applies to individuals, Plaintiff has the ability to bring an action under it against Defendant Welsh in her capacity as a private individual. Plaintiff, however, alleges insufficient facts to maintain a claim against Defendant Welsh in her individual capacity. In order to state a claim under the Civil Rights Act, a plaintiff must allege that (1) he had a right under the constitution or laws of the United States or the Commonwealth of Massachusetts; (2) that right was interfered with; and (3) the interference occurred through threats, intimidation, or coercion by the defendant.[27] By specifying that an unlawful interference is one that occurs through threats, intimidation, or coercion, the legislature limited the scope of possible violations so that not every interference by an individual with the rights of another is actionable under the Civil Rights Act.[28]  The test for whether a defendant's conduct is threatening, intimidating, or coercive

---

[27] Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 337 (Mass. 1996); see Meuser v. Fed. Express Corp., 564 F.3d 507, 516 (1st Cir. 2009) ("'Threat' . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. ['Coercion' involves] the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.") (internal citations and quotations omitted).

[28] Currier v. Nat'l Bd. of Med. Exm'rs, 965 N.E.2d 829, 838 (Mass. 2012) ("Although entitled to liberal construction of its terms, the civil rights act was not intended to create, nor may it be construed to establish a vast constitutional tort. It is for this reason that the Legislature explicitly limited the [civil rights act's] remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion.") (internal citations and quotations omitted); see also Longval v. Comm'r of Corr., 535 N.E.2d 588, 593 (Mass. 1989) ("Not every violation of law is a violation of the [Civil Rights Act]. A direct violation of a person's rights does not by itself

6

is objective and asks whether a reasonable person would consider the conduct to be so.[29] The law does not require physical force or even a direct confrontation between a plaintiff and a defendant in order for the defendant to be liable for threatening, intimidating, or engaging in coercive conduct in violation of the Civil Rights Act.[30]

The parties do not dispute that Plaintiff had a right under Massachusetts law to use Defendant Library,[31] nor do they dispute that Plaintiff's removal from Defendant Library interfered with that right. Plaintiff, therefore, only has to state a plausible claim that Defendant Welsh brought about his removal through threats, intimidation, or coercion in order to proceed with his claim against her in her individual capacity. While Plaintiff does not allege any contact with Defendant Welsh, he does allege a physical confrontation with the officer who removed him from Defendant Library. Considered in isolation, the officer's acts of physically removing Plaintiff from his seat and escorting him from the building may be considered coercive because a reasonable person in the same situation would feel constrained to rise and leave against his will.[32]

In order to proceed with his claim against Defendant Welsh, however, Plaintiff must demonstrate Defendant Welsh is vicarious liable for the officer's coercive conduct. A plaintiff who

---

involve threats, intimidation, or coercion and thus does not implicate the [Civil Rights Act].").

[29] Meuser, 564 F.3d at 520.

[30] Buster, 783 N.E.2d at 410  ("The [Civil Rights A]ct does not define actionable 'coercion.' . . . [W]e have recognized that coercion may take various forms, and we have not limited its scope to actual or attempted physical force."); see also Redgrave v. Boston Symphony Orchestra, Inc., 502 N.E.2d 1375, 1379 (Mass. 1987) (recognizing economic coercion through deprivation of rights due under contract).

[31] See Mass. Gen. Laws ch. 78 § 3 ("Inhabitants of the county shall, subject to the by-laws, have access to the library and the books therein.").

[32] Meuser, 564 F.3d at 516.

brings a claim of vicarious liability seeks to impute liability for the acts of a tortfeasor to a third

party who acted in a supervisory capacity to the actor at the time of the alleged wrongdoing.[33] A

necessary element of a vicarious liability claim is the existence of an agency relationship in which

the principal charged with liability had a right to control the conduct of his or her agent whose

tortious conduct is at issue.[34] With respect to police officers in particular, it is a "general rule" that

"where the officer is acting in the performance of his public duties or where the defendant does no

more than narrate the material facts to the officer and leave him to decide what he will do[,] the

defendant is not liable for the actions of the officer."[35] A defendant may be vicariously liable for

the conduct of a police officer, however, if the officer, at the time of the conduct in question,

acted not on his or her own discretion as a public servant but at the defendant's command, under

pressure from the defendant, or on the basis of false representations made to him by the

defendant.[36]

      Here, Plaintiff fails to state a claim that Defendant Welsh is vicariously liable for the

---

[33] 74 Am. Jur. 2d Torts § 60; see Richard Bishop, Mass. Prac., Prima Facie Case § 17.8 (5th ed.) ("In tort, the liability of the principal for the acts of his agent rests upon the ancient doctrine of *respondeat superior*, and the burden is upon the party seeking to prove the agency to establish (1) the relationship of principal and agent, and he must also prove (2) that the servant or agent was acting within the express or implied authority conferred upon him by his appointment, and (3) that at the time of committing the tortious act, he was acting upon or within the employer's business or affairs.").

[34] 74 Am. Jur. 2d Torts § 60 n.1 (2012) ("The right to control is indispensable to vicarious liability.").

[35] Kidder v. Whitney, 145 N.E.2d 684, 685 (Mass. 1957) (cited in Scott v. Macy's East, Inc., No. Civ.A 01-10323-NG, 2002 WL 31439745, at *11 (D. Mass. Oct. 31, 2002) (holding that defendant not liable for tort committed by police officers against plaintiff because defendant's responsibility was "sufficiently attenuated" where plaintiff and defendant had no interaction and defendant only provided police with a legitimate "tip-off")).

[36] Seelig v. Harvard Coop Soc., 246 N.E.2d 642, 645 (Mass. 1969).

officer's alleged conduct in violation of the Civil Rights Act.  He pleads  insufficient facts to give rise to a plausible inference that Defendant Welsh either had a right to control the conduct of the officer or that the officer acted under pressure from Defendant Welsh rather than at his own discretion. The only conduct that Plaintiff alleges on the part of Defendant Welsh is her signing that Order that the officer served on Plaintiff.[37] Plaintiff does not allege or offer facts that raise above the level of speculation the conclusion that Defendant Welsh commanded or induced the officer's coercive conduct. Plaintiff therefore has failed to state a claim that Defendant Welsh is vicariously liable for the officer's conduct in violation of the Civil Rights Act.  Accordingly, Plaintiff has failed to state a claim of violation of the Civil Rights Act against any of Defendant.

      ii.    <u>The Massachusetts Public Accommodations Statute</u>

The Massachusetts Public Accommodations Statute ("the Public Accommodations Statute") prohibits "discrimination . . . on account of physical or mental disability . . . in any place of public accommodation" including in a public library.[38] Because the Public Accommodations Statute affords relief subject to Mass. Gen. Laws ch. 151B §5, actions brought under the Public Accommodations Statute are subject to ch. 151B § 5's nonwaiveable requirement that a plaintiff file a complaint with the MCAD before filing a civil suit.[39] Further, according to Mass. Gen. Laws

---

[37] Am. Compl. ¶ 10.

[38] Mass. Gen. Laws ch. 272 §§ 92, 98.

[39] Mass. Gen. Laws ch. 151B § 5; Mass. Gen. Laws ch. 272 § 98 ("[Whoever discriminates in any public accommodation on the basis of disability] shall be liable to any person aggrieved . . . for such damages as are enumerated in section five of chapter one hundred and fifty-one B."); <u>East Chop Tennis Club v. Mass. Comm'n Against Discrimination</u>, 305 N.E.2d 507, 509 (Mass. 1973) (finding that ch. 272 § 98 is governed by ch. 151B § 5); <u>Everett v. 357 Corp.</u>, 904 N.E.2d 733, 747 (Mass. 2009) ("The predicate of administrative filing is mandatory to filing a civil suit. It may not be waived.").

ch. 151B § 9, "[a]ny person claiming to be aggrieved by a practice made unlawful under this chapter . . . may, at the expiration of ninety days after the filing of a complaint with the commission . . . but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages[.]"[40] A plaintiff who has complied with the jurisdictional prerequisites may file a civil suit under the Public Accommodations Statute.

In order to survive a motion to dismiss, the plaintiff alleging a violation of the Massachusetts Public Accommodations Statute must plead all the elements of a prima facie case of discrimination, including either a purposeful intent to discriminate on the part of the defendant, or the disparate impact of a defendant's policy on persons in plaintiff's class.[41] A plaintiff may claim intentional discrimination by pleading direct or circumstantial evidence of a discriminatory motive on the part of the defendant, or by alleging that the defendant's nondiscriminatory explanation for an act is pretext for such a motive.[42]

Here, Plaintiff, acting pro se, did not file an administrative complaint with the MCAD before filing his first Complaint in this action.  The court will not, however, dismiss Plaintiff's

---

[40] Mass. Gen. Laws ch. 151B, § 9; see 357 Corp., 904 N.E.2d at 747 ("General laws c. 151B, § 9 permits a plaintiff to remove the case to the Superior Court on 'the expiration of ninety days after the filing of a complaint with [MCAD]. . . .'"); see also 357 Corp., 904 N.E.2d at 747 The mandatory administrative filing does not require a plaintiff to await a determination by the MCAD prior to filing a civil suit.").

[41] Currier, 965 N.E.2d at 843 (holding that either "intentional, purposeful discrimination" or disparate impact is necessary to a claim under the Public Accommodations Statute); Scott, 2002 WL 31439745, at *5 (holding that plaintiff's failure to show intent vitiated his discrimination claim under ch. 272 § 98).

[42] Compare Jones v. City of Boston, 738 F. Supp. 604, 605 (D. Mass. 1990) (plaintiff's allegation that hotel employee used a racial slur was sufficient to state a ch. 272 § 98 claim against that employee), with id. at 606 (hotel manager's request that plaintiff leave hotel, absent further evidence of discriminatory motive, was insufficient to sustain a ch. 272 § 98 claim against manager).

claim for this reason because Plaintiff has since brought himself into compliance with jurisdictional

prerequisites of the Public Accommodations Statute and could simply refile[43] his claim if it were

dismissed.[44]

      Plaintiff's Amended Complaint , nevertheless, alleges insufficient facts to sustain his claim

that Defendants discriminated against him based on his disability. Plaintiff offers no factual

allegations to support a reasonable inference that negative feelings toward his disability motivated

Defendants' actions in suspending his privileges and ordering his removal from Defendant Library.

Plaintiff similarly does not allege facts that plausibly suggest that the reason given by Defendants

for their actions–that Plaintiff allegedly had viewed pornography on Defendant Library's

computers–was pretext for a discriminatory motive. Plaintiff does not, furthermore, suggest that

his disability was apparent to Defendants or that Defendants even knew of his disability. Plaintiff

merely states that Defenant Library and its employees discriminated against him on the basis of his

---

    [43] Lebrón-Ríos v. U.S. Marshal Serv., 341 F.3d 7, 12-13 (1st Cir. 2003) (dismissal for failure to exhaust administrative remedies is without prejudice to refiling after complying with jurisdictional requirement).

    [44] Harrison v. Kraft Foods, Inc., No. 07-10233-RWZ, 2007 WL 3232552, at *4 (D. Mass. Oct. 30, 2007) (Zobel, J.) ("The proper procedural remedy in this situation is dismissal . . . . However, [when a plaintiff has] satisfied the prerequisites under ch. 151 B and time remains in the limitations period for him to file another complaint, he could simply file a separate action with these claims. Such a course is not efficient. Given this unique situation, dismissal of the claims for failure to exhaust administrative remedies would represent the triumph of form over substance and common sense."); see also Turnley v. Banc of Am. Inv. Servs., Inc., 576 F. Supp. 2d 204, 219 (D. Mass. 2008) (Saris, J.) ("The currently operative first amended complaint was filed well after the ninety-day exhaustion period has elapsed.  Thus, any deficiency in the original complaint was cured by the filing of the amended complaint. . . . Once the administrative process has been allowed to run its course, however . . . there is no bar to this Court's exercise of its jurisdiction.") (citations and internal quotation marks omitted); but see Ackerson v. Dennison Mfg. Co., 624 F. Supp. 1148, 1150 (D. Mass. 1986) (jurisdictional requirement of prior administrative filing is mandatory and cannot be waived); 357 Corp., 904 N.E.2d at 747-48 (same); Carter v. Comm'r of Corr., 681 N.E.2d 1255, 1259 (Mass. App. Ct. 1997) (same).

disability. This is not a factual allegation, but a legal conclusion that is not entitled to deference.[45]

Plaintiff has failed to support his claim under the Public Accommodations Statute with factual

allegations that raise the claim beyond the level of speculation. Accordingly, Plaintiff's has failed

to state a claim for violation of the Public Accommodations Statute.

            iii.    Intentional Infliction of Emotional Distress

    It is clear that Plaintiff's IIED claim against Defendant Hanover, Defendant Library, and

Defendant Welsh–in her official capacity–is barred by sovereign immunity.[46] Plaintiff's Amended

Complaint also contains insufficient facts to state a claim of IIED against Defendant Welsh in her

individual capacity. In order to state a claim of IIED, a plaintiff must allege that the defendant

intentionally caused him or her extreme emotional distress through conduct that is "extreme and

outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized

society."[47] Regarding figures of authority, and police officers in particular, the Restatement

(Second) of Torts, points to extreme abuses of power, such as threatening arrest in order to

---

[45] Twombly, 550 U.S. at 555.

[46] Massachusetts Tort Claim Act (MTCA), Mass. Gen. Laws. ch. 258 § 10 (waiver of sovereign immunity "shall not apply to: . . . (c) any claim arising out of an intentional tort, including . . . intentional mental distress . . . ."); N. H. Ins. Guar. Ass'n v. Markem Corp., 676 N.E.2d 809, 813 (Mass. 1997) (sovereign immunity bars claims against the state and municipalities unless a statute clearly expresses or necessarily implies consent to suit); Tilton v. Town of Franklin, 506 N.E.2d 897, 899 (Mass. App. Ct. 1987) ("The reference in [the MTCA] to the tort of 'intentional mental distress' refers to the tort first recognized in George v. Jordan Marsh Co., 359 Mass. 244, 268 N.E.2d 915[, 922] (1971), and later applied in Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315[, 317-18] (1976)] (where it is referred to . . . as 'the cause of action for intentional or reckless infliction of emotional distress') . . . ."); see also Spring v. Geriatric Auth. of Holyoke, 475 N.E.2d 727, 734 (Mass. 1985) ("[P]ublic employers are immune from such suits [for IIED].").

[47] Agis, 355 N.E.2d at 318 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

extort money, as grounds for liability.[48] The law will not attach liability to "mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities"[49] of the type that may be

expected occasionally to arise as a consequence of societal living. It is not even enough that the

defendant acted with a tortious, criminal, or malicious intent that in another tort action would

merit punitive damages.[50] Whether conduct is extreme and outrageous is a matter for the jury only

where reasonable jurors could differ on the issue.[51]

Plaintiff, in this case, has failed to state a claim for IIED against Defendant Welsh in her

individual capacity because none of the conduct that he alleges on the part of Defendants or any

of their employees rises to the level of "extreme and outrageous" under the high standard set out

above. Plaintiff alleges that an employee of Defendant Library informed him that his library

privileges had been suspended;[52] that Defendant Welsh signed the order;[53] that the officer, in the

course of serving and enforcing the order, forcibly removed Plaintiff from his chair and escorted

him from the building;[54] and that Plaintiff later learned that he had been accused of viewing

pornography on a library computer.[55] The facts do not demonstrate that Defendant Welsh abused

---

[48] Restatement (Second) of Torts § 46 cmt. e (1965).

[49] Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (1987) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

[50] Foley, 508 N.E.2d at 82 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

[51] Agis, 355 N.E.2d at 319 (citing Restatement (Second) of Torts § 46 cmt. h (1965)).

[52] Am. Compl. ¶ 8.

[53] Am. Compl. ¶ 10.

[54] Am. Compl. ¶ 10.

[55] Am. Compl. ¶ 11.

her position to cause Plaintiff extreme emotional distress. Although Plaintiff may understandably have suffered great distress as a result of learning that he had been accused of viewing pornography in a public place that he often visited, Plaintiff does not describe the circumstances surrounding this discovery. Plaintiff does not state from whom he learned of the accusation and does not attribute the information to Defendant Welsh. Reasonable minds could not differ as to Plaintiff's failing to allege extreme and outrageous conduct by Defendant Welsh under the high standard set out above. Accordingly, Plaintiff has failed to state a claim for intentional infliction of emotional distress against all Defendants.

IV.    <u>Conclusion</u>

For the reasons stated above, <u>Defendant's Motion for Partial Dismissal</u> [#6] is ALLOWED.  Counts I, III, and IV of Plaintiff's <u>Amended Complaint</u> [#1, Ex. A] are DISMISSED.  Plaintiff proceeds on Count II under 42 U.S.C. § 1983.

IT IS SO ORDERED

    /s/ Joseph L. Tauro
United States District Judge